782 So.2d 212 (2000)
Ex parte Patrick SEABOL.
(Re: Patrick Seabol v. Carl Michael Seibert et al.)
1981885.
Supreme Court of Alabama.
September 1, 2000.
Jimmy Alexander, James M. Corder, Robert M. Baker, and Mitchell K. Shelly of Alexander, Corder, Plunk, Baker & Shelly, P.C., Athens, for petitioner.
W. David Niochols and John L. Bodie of Hoover Law Center, Birmingham, for respondent Carl Michael Seibert.
Brant A. Young of Cox, Young & Griffin, Florence, for respondents SunTrust Bank, Alabama, N.A., and Jack Johnson.

*213 On Application for Rehearing

COOK, Justice.
The opinion of May 26, 2000, is withdrawn, and the following is substituted therefor.
On September 17, 1996, Patrick Seabol sued Carl Michael Seibert, alleging legal-service liability pursuant to § 6-5-570, Ala.Code 1975, and seeking a sale of certain real estate for a division of the proceeds. On September 5, 1997, Seabol amended his complaint to include as defendants Suntrust Alabama[*] (formerly known as The First Bank of Florence, Alabama) and Jack Johnson and to add a third count alleging claims of fraud, fraudulent suppression, and conspiracy to defraud. Seibert, Suntrust, and Johnson each moved for a summary judgment. The trial court granted each defendant's summary-judgment motion, on the basis that the claims were barred by the statute of limitations. The Court of Civil Appeals, on March 19, 1999, affirmed, without an opinion. Seabol v. Seibert, 776 So.2d 225 (Ala.Civ.App. 1999) (table).
The materials before the trial court when it entered the defendants' summary judgments, viewed most favorably to the plaintiff, suggest the following facts. On January 21, 1988, Seabol executed and delivered a promissory note to Suntrust in the amount of $50,000. The note was secured by a real-estate mortgage, which encumbered six acres of land in Florence. On January 29, 1988, eight days after Seabol had executed the promissory note, Suntrust advanced Seabol $25,000. Suntrust advanced money again on June 17, 1988, in the amount of $5,000. From August 5, 1988, through June 15, 1990, Suntrust advanced Seabol, in a number of transactions, a total of $45,430.67. The mortgage and promissory note to Suntrust were for $50,000 and contained no provision to secure future advances. Therefore, the mortgage did not constitute a valid lien on the six acres of land with regard to any of the future advances.
In March 1993, Seabol contacted Seibert, an attorney, for information on how to delay Suntrust's threatened foreclosure on the six acres pursuant to the January 21, 1988, mortgage. Seibert never informed Seabol of the possibility that the lien could be invalid. On March 22, 1988, Seibert prepared and filed for Seabol a voluntary petition for Chapter 13 bankruptcy. The Chapter 13 petition listed the six acres as having a collateral value of $200,000. Seabol alleges that Seibert forged Seabol's signature on three of the supporting documents filed with the bankruptcy petition.
While the bankruptcy proceedings were pending, Seibert told Seabol that Suntrust could immediately foreclose on the six acres and that he, Seibert, was willing to buy the land. Seibert agreed to pay $95,000, and Seabol stopped looking for other potential buyers. Two weeks later, Seibert told Seabol that he could only pay $75,000, but that Seabol needed to do something with the land immediately; otherwise, Seibert told him, he could lose everything.
Seibert arranged to meet with Seabol and Jack Johnson (a banker with Suntrust) at a Suntrust office on July 22, 1993. At that meeting, Seibert told Seabol that he would pay for the six acres only the amount of the outstanding promissory note and mortgage (approximately $50,000). *214 Seabol objected to the change in price, but Seibert stated that Suntrust could foreclose on the mortgage immediately, and, therefore, that Seabol really had no choice but to sell the six acres to him. Seabol sold him the six acres for $50,000. Seibert sold the six acres, in December 1993, for $129,000.
Seibert never disclosed to the bankruptcy court that he was negotiating with Seabol to buy the six acres. Seabol's bankruptcy proceedings did not close until August 24, 1993.
Seabol claims that Seibert, Johnson, and Suntrust knew at the time of the sale that the mortgage was invalid, but fraudulently represented to him that the mortgage did constitute a valid lien that could be immediately enforced.

I.
Seabol's claim against Seibert comes within the definition of "legal service liability action" provided in § 6-5-572(1), Ala. Code 1975:
"Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."
The limitations period for any action coming within the definition provided in § 6-5-572(1) is prescribed by § 6-5-574(a):
"All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date."
Under § 6-5-574, "a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when `the act or omission or failure giving rise to the claim' occurs, and not when the client first suffers actual damage." Ex parte Panell, 756 So.2d 862, 868 (Ala.1999). Thus, the running of the limitations period is tolled until the client discovers, or reasonably should discover, the attorney's act or omission or failure. Section 6-5-574(a) further provides that any action filed beyond the two-year limit "must be filed within four years of the wrongful act or omission, regardless of whether the client has suffered damage." Ex parte Panell, 756 So.2d at 867. Therefore, Seabol, at the most, had four years in which to file his claim against Seibert.
In Leighton Avenue Office Plaza, Ltd. v. Campbell, 584 So.2d 1340 (Ala.1991), this Court stated:
"The `saving provision' applicable in fraud actions generally, Ala.Code 1975, *215 § 6-2-3, is also, under § 6-5-574(b), applicable in legal malpractice actions based on allegations of fraud. Section 6-2-3 provides:
"`In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.'
Thus, under § 6-5-574(b), a legal malpractice action based on allegations of fraud must be commenced within two years after the discovery by the aggrieved party of the fact constituting the fraud; provided, however, that no action may be commenced more than four years after the act or acts constituting the fraud. The burden is on the plaintiff to show that he comes within the § 6-2-3 tolling provision. Lowe v. East End Memorial Hospital, 477 So.2d 339 (Ala. 1985). Russell v. Maxwell, 387 So.2d 156 (Ala.1980); Amason v. First State Bank of Lineville, 369 So.2d 547 (Ala. 1979)."
584 So.2d at 1344.
Seabol's first contact with Seibert came in March 1993. He filed his claim against Seibert in September 1996, within the four-year limit. We must determine, then, whether Seabol filed his claim within six months from the date he discovered or should have discovered his attorney's fraudulent misrepresentations.
Seabol argues that he did not discover that under Alabama law his mortgage was invalid and did not constitute a valid lien against the six acres until he met with a second attorney, on August 22, 1996. Seibert argues that Seabol had knowledge of facts or discovered facts no later than 1993 that should have alerted him that his mortgage was or could have been invalid. Seabol is licensed as a real-estate agent in both Alabama and California; Seibert contends that Seabol therefore should have discovered the invalidity of the mortgage within the two-year limitations period.
In reviewing a summary judgment, this Court must look to see if the evidence presents a dispute as to some material fact, and, if it does, then "this Court must review the record in the light most favorable to [the nonmoving party]." Ex parte Panell, 756 So.2d at 863. Because it was Seibert who moved for a summary judgment, this Court must look at the evidence in the light most favorable to Seabol. The burden is Seabol's "to present substantial evidence creating a genuine issue of material fact," and "[e]vidence is `substantial' if it is of `such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Panell, 756 So.2d at 863 (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)).
Seabol claims that he did not have specific knowledge of Alabama law and therefore relied on his attorney, Seibert, to be honest and truthful when giving him legal advice. He further claims that he had no reason to question the validity of the mortgage until he spoke with another attorney in 1996.
Seibert argues that Seabol had had extensive experience with buying and selling real estate. Therefore, Seibert says, Seabol should have been able to read and deduce from the mortgage that it did not secure any future advances. However, Seibert produced no evidence indicating that Seabol had previously been involved in foreclosure proceedings. No evidence in the record indicates that any of the properties Seabol had bought and sold before he sold the six acres at issue in this *216 case were ever subject to foreclosure. Thus, the evidence does not indicate that, before this present transaction, Seabol had been faced with the question whether a mortgage lien was valid or invalid.
Furthermore, Seabol had a copy of the promissory note that promised payment of the future advances. The note clearly indicates that it is secured by a mortgage. Seabol could have reasonably assumed that the promissory note was sufficient to secure the mortgage lien. Looking at the evidence in the light most favorable to Seabol, we conclude that he presented substantial evidence from which a jury could have found that he did not know, and could not have known, until 1996, of Seibert's wrongful acts or omissions. Therefore, the summary judgment was improper as to the claim against Seibert.

II.
Seabol's fraud and suppression claims against Suntrust and Johnson are subject to the two-year statute of limitations, § 6-2-38(l), Ala.Code 1975. That statute of limitations is subject to the "saving clause" provided by § 6-2-3:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
"The question of when a party discovered or should have discovered the fraud is generally one for the jury." Liberty Nat'l Life Ins. Co. v. Parker, 703 So.2d 307, 308 (Ala.1997).
Suntrust and Johnson argue that Seabol had sufficient facts to put a reasonable person on notice of a possible fraud, because he had had knowledge of, and direct experience with, real-estate transactions and had had possession of a copy of the mortgage. In Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997), this Court returned to the "reasonable-reliance" standard (for "all fraud cases filed after the date of [the Foremost] decision, i.e., all cases filed after March 14, 1997"), stating:
"[A] return to the `reasonable reliance' standard will once again provide a mechanism, which was available before Hickox, whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."
693 So.2d at 421 (referring to Hickox v. Stover, 551 So.2d 259 (Ala.1989)). Seabol amended his complaint to add claims against Suntrust and Johnson in September 1997; thus, the rule established in Foremost applies in this case.
In Foremost, this Court held that, under the reasonable-reliance standard, the plaintiffs' claims alleging fraud would have been barred by the statute of limitations because the plaintiffs had had access to all the pertinent insurance documents at issue and, had they chosen to do so, could have easily read the insurance documents and determined the full extent of their insurance coverage. 693 So.2d at 422. The plaintiffs' failure to read the insurance documents would not have tolled the running of the limitations period, under the reasonable-reliance standard. Id.
In the present case, the documents at issue are not as easily understood. The mortgage did not in any way refer to future advances of money, and the note promising to pay the future advances indicated that it was secured by a mortgage. Therefore, it would be difficult for Seabol to deduce, simply by reading the mortgage *217 and the promissory note, that the mortgage did not constitute a valid lien against the six acres of property. Even though Seabol had knowledge of real-estate transactions and had possession of copies of the mortgage papers, a jury, taking Seabol to be a reasonable realtor, could find that his reliance on the oral representations of his attorney and his banker was reasonable. Therefore, the summary judgment was improper as to Seabol's fraud and suppression claims against Suntrust and Johnson.
The judgment of the Court of Civil Appeals is reversed, and the cause is remanded.
OPINION OF MAY 26, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, JOHNSTONE, and ENGLAND, JJ., concur.
LYONS and BROWN, JJ., concur to overrule the application for rehearing and concur in the result as to the substituted opinion.
HOUSTON and SEE, JJ., concur in part and dissent in part.
HOUSTON, Justice (concurring in part and dissenting in part).
I agree that the summary judgment was improper as to Seibert.
When this case was originally before us, I was led to believe that the claims against Suntrust and Johnson were filed in September 1996, during the period when this Court was applying the "justifiable-reliance" standard established by Hicks v. Globe Life & Accident Ins. Co., 584 So.2d 458 (Ala.1991), as the standard for determining whether a fraud cause of action was barred by the statute of limitations. In Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997), this Court returned to the "reasonable-reliance" concept for determining statute-of-limitations questions in fraud cases. There is a substantial difference between "reasonable reliance" and "justifiable reliance." When this Court issued its original opinion on May 26, 2000, I concurred in the holding that a jury could find that Seabol had "justifiably" relied on oral representations of his attorney and his bankerbut I was erroneously thinking the "justifiable-reliance" standard applied. Now that I know that the claims against Suntrust and Johnson were added in September 1997 and that the relationship between Seabol and Johnson and Suntrust is therefore governed by the "reasonable-reliance" standard, I dissent from the holding as to the defendants Johnson and Suntrust.
SEE, Justice (concurring in part and dissenting in part).
I concur in Part I; I agree that the summary judgment was improper as to Seibert. However, for the reasons stated by Justice Houston in his special writing, I dissent from Part II, which holds that a jury could find that Seabol's reliance on the oral representations of his attorney and banker was reasonable.
NOTES
[*] Note from the reporter of decisions: In the materials filed in the Supreme Court, this party's name is spelled in several different ways, e.g., SunTrust Bank, Alabama, N.A.; Sun Trust Alabama, N.A.; SunTrust, Alabama, N.A.; Suntrust Bank, Alabama, N.A.; and Sun-Trust Bank of Alabama, N.A.