By its terms, the summary judgment under review applies only "as to those acts or omissions of . . . Freeman beginning on December 2, 1999 through December 7, 2000." Because I interpret the Alabama Supreme Court as having adopted the "occurrence" rule in Part I of its opinion in Ex parte Seabol, 782 So.2d 212, 214
(Ala. 2000),[4] I can concur in the reversal of that judgment only if I accept that Freeman fraudulently concealed an "occurrence" from Rutledge, i.e., that she had breached the standard of care at some point on or before December 6, 2000, such that Rutledge could properly rely on Ala. Code 1975, § 6-2-3.
In his affidavit filed in response to Freeman's summary-judgment motion, Rutledge testified:
 "During a [f]amily [c]ourt hearing in April or June, 2001, I asked . . . Freeman whether there was anything I could do from a legal standpoint or a lawsuit standpoint about having been incarcerated in the Jefferson County Jail, without any further [c]ourt hearing, for a year and five days. At the same time, I also asked . . . Freeman, with regard to the time I served in the Jefferson County Jail, whether I just had to `take it' and not be able to do anything about it. In response to my questions, . . . Freeman told me that, as far as she knew, there was nothing I or anyone else could do about my having been incarcerated for a year and five days because the [f]amily [c]ourt judge in my case could keep me in jail for as long as she (the judge) wanted to."
Freeman, who works for the Legal Aid Society of Birmingham, was hired to represent Rutledge for the specific purpose of defending Rutledge against the allegations of Nikitris Threadgill's contempt petition. Rutledge's affidavit indicates that he asked Freeman an open-ended question concerning whether he had a potential cause of action arising from his incarceration. From the text of Freeman's response, one can perceive that she interpreted Rutledge's question as inquiring about potential causes of action against the Jefferson County jail or court personnel. For all that appears in the record, Freeman's answer, when viewed in the context of her representation, was truthful; in fact, the trial court, at the same time it entered the *Page 372 
summary judgment under review, dismissed, pursuant to Rule 12(b)(6), Ala. R. Civ. P., Rutledge's claims against Jefferson County and "Jefferson County Family Court."
The Alabama Supreme Court noted in Tonsmeire v. Tonsmeire,285 Ala. 454, 458, 233 So.2d 465, 468 (1970), that "[i]n the absence of a confidential relationship, we know of no duty imposed by law obligating an alleged tort feasor to make known to one possibly injured by his acts the existence of a possible cause of action." While Freeman's relationship to Rutledge certainly required zealous representation of Rutledge with respect to Threadgill's contempt allegations, the existence of that relationship did not, in my view, require Freeman to extrapolate from Rutledge's open-ended gripe about "the system" the possibility that Rutledge might want to sue her and to then reveal that she may have breached the applicable standard of care. Because the main opinion necessarily takes the opposite position in reversing the summary judgment in favor of Freeman with respect to her actions or omissions occurring between December 2, 1999 through December 7, 2000, I respectfully dissent.
[4] None of the nine Justices dissented from that part of the opinion, and six Justices expressly concurred therein.