THOMPSON, Presiding Judge.
Michael D. Brooks appeals from a summary judgment entered in favor of his former employer, Franklin Primary Health Center, Inc. (“Franklin Health”), and its chief executive officer, Charles White (hereinafter referred to collectively as “Franklin”). Brooks appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The record tends to indicate the following. Brooks is an obstetrician-gynecologist (“OB-GYN”). He practiced medicine in Michigan and with the United States Navy. In late 2002, Franklin, through a national recruiting agency, recruited him to come to Mobile. Because of problems Brooks had in obtaining a medical license in Alabama, he did not begin working for Franklin until March 26, 2003.[1] Brooks entered into an employment agreement (“the original agreement”) with Franklin that became effective on March 26, 2003. Pursuant to the original agreement, Brooks was to be paid an annual base salary of $190,000. However, the original agreement also provided that Franklin and Brooks “may, from time to time, reflect increases or decreases in [Brooks’s] Base Salary as may be mutually agreed upon.” The original agreement provided that any such salary change constituted an amend- *934 merit to the agreement and would supersede Brooks’s original base salary of $190,000. The original agreement further provided that Brooks was to see an average of 25 patients per working day. It did not specify the number of babies Brooks was to deliver during any given period.
By December 2003, low productivity in Franklin Health’s OB-GYN department was causing a decline in the department’s revenue. The members of the administration of Franklin Health and the physicians working in the OB-GYN department, including Brooks, held discussions to address the low productivity. The discussions eventually resulted in a December 17, 2003, letter agreement (“the letter agreement”) that established a target of 20 deliveries each month by each OB-GYN on staff, as well as the nurse midwife on staff, to ensure that the OB-GYN department was financially viable. The letter agreement also stated that, because the department had not been meeting that target, Franklin had “no choice but to reduce [Brooks’s] annual salary from $190,000 to $150,000 effective 01/01/2004.” If the number of deliveries reached the target number of 20, Brooks’s annual salary would be readjusted to $190,000. However, the letter agreement continued, if the number of deliveries remained below 20, Franklin “reserve[d] the right to take further action.” The letter agreement stated that, if Brooks agreed to the salary reduction, he was to sign the letter and return it to White by December 31. Brooks did so.
After the parties entered into the letter agreement, Franklin Health’s OB-GYN department consistently failed to reach its target number of deliveries. In addition, evidence was submitted indicating that Brooks was not meeting the requirement set forth in the original agreement that he see an average of 25 patients per day. On March 10, 2004, Franklin notified the physicians and nurse midwife in the OB-GYN department that the obstetrics program was being terminated as of May 1, 2004, because Franklin could no longer afford to keep it operating. Brooks acknowledged that he never made more than 15 deliveries a month during his tenure with Franklin Health.
The original agreement provided that Franklin and Brooks had the right to terminate the original agreement upon four months’ written notice. However, the original agreement also allowed Franklin to terminate Brooks’s employment upon two weeks’ notice if Brooks failed to fulfill the terms of the original agreement. The March 10, 2004, letter stated that the notice of approximately seven weeks was more than the two weeks’ notice required to terminate the employment of the OB-GYN providers for cause.
In a letter dated April 23, 2004, Franklin offered to allow Brooks to continue working until May 31, 2004. During that time, Brooks would provide gynecological services and prenatal care to Franklin Health’s patients. His salary for that month would be equal to the monthly salary he was receiving while earning $150,000 annually. Brooks did not accept the offer. Instead, immediately upon the closing of the OB-GYN department, Brooks began working at the OB-GYN department of the Greater Mobile Physicians Group.
In October 2004, Brooks sent a letter to Franklin alleging that he had been wrongfully terminated and demanding a settlement. Brooks and Franklin could not resolve their dispute, and Brooks filed this action on November 19, 2007, alleging claims of breach of contract and fraud. After discovery was completed, Franklin filed a motion for a summary judgment on both claims. The trial court granted the motion and entered the summary judg *935 ment in favor of Franklin. Brooks appeals.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ “We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2001) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Brooks argues that the summary judgment on the breach-of-contract claim was improper because, he says, genuine issues of material fact exist as to whether he fulfilled his obligations under the terms of the agreements and whether Franklin properly terminated his employment for cause. In support of his argument, Brooks contends that Franklin violated its obligation of good faith and fair dealing under the agreements by failing to disclose to Brooks that the average number of deliveries per physician or midwife had been below 20 before he signed the original agreement and that there had been a “radical” change in the method of payment to providers involving millions of dollars, which had a direct financial impact on Franklin.
Brooks acknowledged that he did not see an average of 25 patients a day, as required by the original agreement, but, he says, that was because fewer than 25 patients came to the OB-GYN department each day. He said that the agreements did not require him to conduct any marketing or otherwise make attempts to draw patients to Franklin Health, and, he said, it was not his responsibility to increase patient numbers.
We note that the trial court did not set forth the grounds upon which it entered the summary judgment. In its motion for a summary judgment, Franklin argued that because Brooks turned down Franklin’s offer to stay an additional month after the obstetrics program closed, and instead immediately took a job as an OB-GYN at another facility in Mobile, Brooks suffered no damages.
Proof of the damages resulting from a defendant’s alleged breach of contract is a required element in a breach-of-contract claim. See Shaffer v. Regions Fin. Corp., 29 So.3d 872 (Ala.2009) (quoting Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala.2002)) (“‘The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs performance under the contract; (3) the defendant’s nonperformance; and (4) resulting damages.’ ”). In submitting evidence indicating that Brooks had immediately begun working with the Greater Mobile Physicians Group after leaving Franklin Health, Franklin presented sub *936 stantial evidence indicating that Brooks was unable to prove damages in this case. Brooks failed to submit any evidence to the contrary. However, Brooks’s failure to submit evidence of damages is, alone, an insufficient basis for the summary judgment.
“Alabama law provides for nominal damages if a breach of contract is proven, even if a breach-of-contract plaintiff cannot prove actual damages. Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126, 128 (Ala.1989) (‘It is well settled, however, that once a breach of contract has been established, as it was in this case, the nonbreaching party is entitled to nominal damages even if there was a failure of proof regarding actual damages.’); see also James S. Kemper & Co. Southeast, Inc. v. Cox & Assocs., Inc., 434 So.2d 1380, 1385 (Ala.1983) (‘When the evidence establishes a breach, even if only technical, there is nothing discretionary about the award of nominal damages.’). Thus, even if Jones and the companies failed to present substantial evidence of actual damages, Hamilton would not be entitled to a summary judgment on the breach-of-contract claim on that ground.”
Jones v. Hamilton, 53 So.3d 134, 142 (Ala.Civ.App.2010). Accordingly, the summary judgment on Brooks’s breach-of-contract claim could not properly be entered on the basis of Brooks’s apparent lack of damages alone.
In its summary-judgment motion, Franklin also argued that, in signing the letter agreement, Brooks had agreed that, if the OB-GYN department’s productivity did not improve, Franklin could take further action. Franklin appears to argue that, when it did take further action by closing the department, it had cause to terminate Brooks’s employment. Therefore, Franklin asserts, it was required to give only two weeks’ notice to Brooks of the decision to terminate his employment under the agreements.
The evidence is undisputed that, after the parties entered into the letter agreement, the productivity of the OB-GYN department did not improve, and Franklin made the decision to close that department. Franklin appears to argue that, because of the lack of productivity on the part of the physicians and the midwife in the OB-GYN department, it had cause to terminate Brook’s employment under the agreements. Because Brooks’s employment was terminated for cause, Franklin says, the seven weeks’ notice it provided to Brooks regarding the closure of the OB-GYN department was more than adequate under the terms of the original agreement, which required only two weeks’ notice of termination for cause.
Franklin’s argument does not address the question whether its decision to close the OB-GYN department because a sufficient number of patients were not being treated at Franklin Health’s facility constituted a breach of the original agreement. Brooks correctly points out that the original agreement did not require him to participate in marketing efforts. In his deposition, White acknowledged that Brooks was hired to work as an OB-GYN and that he was not required to participate in marketing or to make management decisions. Franklin offered no factual or legal explanation as to how Brooks breached the original agreement if he was not responsible for drawing 25 patients per day to Franklin Health for treatment. Furthermore, Franklin did not present any factual basis or legal authority for its assertion that, if the OB-GYN department was not financially viable, it could terminate Brooks’s employment for cause. Franklin also failed to demonstrate that, even if Brooks had accepted the month-long extension to *937 stay at the Franklin Health facility as a gynecologist, the decision to end his employment years before the end of the term set forth in the original agreement did not constitute a breach of that agreement. Furthermore, although the letter agreement stated that if the productivity of the OB-GYN department did not improve Franklin could take “further action,” there is no evidence indicating that the parties contemplated that “further action” meant terminating the original agreement. In short, Franklin’s motion and supporting documentation failed to show that it was entitled to a summary judgment.
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994).” Nance v. Southerland, [Ms. 2080746, Jan. 29, 2010] — So.3d -, - (Ala.Civ.App.2010).
Based upon the record before us, we conclude that Franklin failed to meet its burden to make a prima facie showing that there is no genuine issue of material fact and that it was entitled to a judgment as a matter of law on Brooks’s breach-of-contract claim. Accordingly, the trial court erred in entering the summary judgment in favor of Franklin on that claim.
Brooks also contends that the fraud claim against Franklin was not barred by the applicable statute of limitations, the basis upon which Franklin had sought a summary judgment as to that claim. Therefore, Brooks says, the trial court erred in entering the summary judgment. In support of his contention, Brooks argues that he did not discover Franklin’s alleged fraud until an unspecified time in November 2005. This action was filed on November 19, 2007.
Fraud claims are subject to a two-year statute of limitations. § 6-2-38(1), Ala.Code 1975.
“ ‘That statute of limitations is subject to the “saving clause” provided by § 6 — 2—3[, Ala.Code 1975]:
“ ‘ “In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.” ’
“Ex parte Seabol, 782 So.2d 212, 216 (Ala.2000). Section 6-2-3, Ala.Code 1975, supplies an objective test, tolling the statute of limitations on a fraud claim until the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts consti *938 tuting the fraud. Seabol, 782 So.2d at 216; Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997). Therefore, the limitations period commences when the plaintiff discovers the fraud or when facts are known ‘“which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.’ ” Auto-Owners Ins. Co. v. Abston, 822 So.2d 1187, 1195 (Ala.2001) (quoting Jefferson County Truck Growers Ass’n v. Tanner, 341 So.2d 485, 488 (Ala.1977)).”
Wheeler v. George, 39 So.3d 1061, 1081 (Ala.2009).
Brooks’s employment with Franklin ended on May 1, 2004. Therefore, any alleged fraud had to have occurred before that date. In his deposition, Brooks stated that he knew by October 14, 2004, that his employment with Franklin Health had ended, that he could not hope to regain his position at Franklin Health, and that Franklin would not “perform [its] duties under the [employment] contract.” Brooks does not indicate the facts or information he allegedly learned of after October 14, 2004, that would bring his fraud claim within the tolling provision of § 6-2-3, Ala.Code 1975. “If it appears that the statutory period has expired, then the party bringing the fraud action has the burden of demonstrating that it comes within the purview of § 6-2-3. Hicks v. Globe Life & Accident Ins. Co., 584 So.2d 458 (Ala.1991). ” Chambless-Killingsworth & Assocs., P.C. v. Osmose Wood Preserving, Inc., 695 So.2d 25, 27 (Ala.Civ.App.1996). Brooks has failed to meet that burden.
Therefore, giving Brooks the benefit of the doubt by assuming that October 14, 2004, was the latest possible date on which he knew or should have known of fraudulent acts by Franklin relating to his employment, the statute of limitations as to the fraud claim would have expired on October 14, 2006, more than a year before he filed this action in November 2007. We conclude that Brooks failed to present a genuine issue of material fact regarding the limitations period as to the fraud claim and that, therefore, Franklin was entitled to a judgment as a matter of law on the basis that Brooks filed the fraud claim after the applicable limitations period had run. Accordingly, the summary judgment in favor of Franklin on the fraud claim is affirmed.
For the reasons set forth above, that portion of the summary judgment entered in favor of Franklin on Brooks’s breach-of-contract claim is reversed, and the cause is remanded for further proceedings; that portion of the summary judgment entered in favor of Franklin on Brooks’s fraud claim is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The record indicates that Brooks’s licensing problem arose from concerns about the number of malpractice actions that had been lodged against him. Franklin interceded on behalf of Brooks. In White's deposition submitted in support of Franklin's motion for a summary judgment, he testified that Franklin had used its “influence” to have the licensing authority reconsider its initial decision to deny Brooks a license to practice medicine in Alabama. Brooks was eventually granted a license.