Rel: April 24, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0106
_____

**Laurie Ibach and Mark Stewart**

**v.**

**Bruce Stewart, individually, as Trustee of the Betty L. Stewart Living Trust, and as Trustee of the Edward T. Stewart Living Trust**

**Appeal from Mobile Circuit Court**
**(CV-24-901773)**

McCOOL, Justice.

Laurie Ibach and Mark Campbell appeal the Mobile Circuit Court's entry of a summary judgment in favor of their uncle, Bruce Stewart. This case concerns a family dispute over Bruce's alleged fiduciary duties as trustee of the Betty L. Stewart Living Trust and the Edward T. Stewart Living Trust.

At the outset, we note that W. Perry Hall, counsel for Laurie and Mark, filed briefs in this appeal that contain numerous invalid, inaccurate, and/or irrelevant citations to legal authorities. They appear to be artificial-intelligence ("AI") "hallucinations," i.e., fake authorities created by an AI system. Because those briefs are grossly deficient under the Alabama Rules of Appellate Procedure, we dismiss the appeal. Further, pursuant to our inherent authority to conduct the proceedings before us in an effective manner and Rule 38, Ala. R. App. P., we find that Hall's conduct is so egregious as to warrant sanctions as set forth below.

## I. Facts and Procedural History

Although we dismiss the appeal for failure to follow our rules of procedure, we set forth the following facts and procedural history to provide context for our ruling.

Laurie and Mark are Edward Stewart's and Betty Stewart's grandchildren, and Bruce is Edward's and Betty's son. The Betty L. Stewart Living Trust and the Edward T. Stewart Living Trust were effectively identical, the only substantive difference between the two trusts was the swapping of names, i.e., where Betty's trust had Edward's name listed, Edward's trust had Betty's name listed, and vice versa. Both trusts stated that they were governed by the substantive law of the State of Illinois. Each trust was fully revocable by the settlor during his or her life and made irrevocable upon the settlor's death. Each trust provided that the trust would be split into a "Marital Share" and a "Non-Marital Share" upon the death of the settlor.

Edward died in 2009, before Betty, so his trust became irrevocable at that time, and it was split into the marital and nonmarital shares. Betty's trust provided her with the right to amend her trust in writing. Betty used that power to make multiple amendments. Originally, the trust named Betty's children, Bruce and Patricia Stewart Campbell, who was Laurie's and Mark's mother, as equal remainder beneficiaries of the trust. The trust provided that if either child predeceased Betty, the trustee would distribute that child's share to his or her descendants upon

3

Betty's death. However, Patricia died in September 2017, leaving Bruce as the only surviving child of Betty. In an amendment, Betty directed her successor trustee to distribute 100% of the net trust estate to Bruce.

Edward's trust provided Betty with a general power of appointment as to all or any portion of the marital share of his trust and a testamentary limited power of appointment over the nonmarital share of his trust. Betty exercised her power of appointment over the Edward T. Stewart Living Trust, directing the trustee to divide the nonmarital share of the trust into one share for Bruce.

In October 2017, Laurie and Mark communicated with Betty and Bruce, asserting their statuses as beneficiaries of the trusts after their mother's passing and requesting information from the trustees. In November 2017, Betty and Bruce responded, asserting that, according to the trust language, Betty was the only beneficiary of Edward's trust during her lifetime and that, therefore, Laurie and Mark were not beneficiaries and would not be provided with the requested information. In December 2017, Laurie and Mark again requested information regarding the trusts, to which Betty and Bruce responded that they had no obligation to provide the information requested. In April 2018, Laurie

4

and Mark again requested information related to the trusts' administration.

Betty died in August 2023. On August 11, 2023, Bruce informed Laurie through text messaging that Betty had passed away. On August 24, 2023, Bruce texted Laurie again, saying that Laurie and Mark were not beneficiaries because of the amendments to the trusts made by Betty. On November 6, 2023, Laurie and Mark, through their attorney, sent a demand letter to Bruce requesting that he carry out his duties as trustee of both trusts by producing trust information. On November 16, 2023, Bruce's attorney responded that Laurie and Mark were not beneficiaries of either trust.

Laurie and Mark ("the plaintiffs") sued Bruce on July 12, 2024, in the Mobile Circuit Court, alleging that Bruce had exerted undue influence over Betty concerning the amendments to the trusts, presumption of undue influence, Betty's lack of capacity to make the amendments, breach of trust, and tortious interference with the plaintiffs' economic expectancy in an inheritance. Bruce responded with a motion for a summary judgment, asserting that each claim is barred by the applicable statute of limitations and that tortious interference with

an economic expectancy is not a claim recognized in Alabama. Specifically, Bruce asserted that the plaintiffs were put on notice in 2017 that they were not beneficiaries of the trusts, and that, therefore the statute of limitations barred their claims. The plaintiffs filed a reply in opposition. In their reply, they asserted that Bruce had wrongly applied the Alabama statute of limitations when the trust agreements provide that Illinois law governs the trusts. They also asserted that they were beneficiaries of the trusts and that, because of their statuses, Bruce, as trustee, owed them a fiduciary duty to provide them information about the trusts. Additionally, based on their assertion that they were beneficiaries at the time the amendments were made, they claimed that Bruce's alleged failure to inform them of their removal as beneficiaries was a breach of his duty and that his alleged concealment of the amendments until August 2023, after Betty's death, tolled the statute of limitations, precluding summary judgment.

A hearing was held in October 2024, after which the plaintiffs filed a brief emphasizing that their claims of breach of fiduciary duty, undue influence, and intentional interference with their economic expectancy in an inheritance are not governed by § 19-3B-604(a), Ala. Code 1975, which

imposes a statute of limitations of either "two years after the settlor's death" or "six months after the trustee sent the person a copy of the trust instrument and notice informing the person of the trust's existence, of the trustee's name and address, and of the time allowed for commencing a proceeding." They asserted that § 6-2-3, Ala. Code 1975, which provides that, in cases of fraud, a statute-of-limitations period is tolled until the injured party discovers the fact underlying the claim, and § 6-2-38, Ala. Code 1975, which provides a two-year statute of limitations for tort claims, apply to their claims. In response, Bruce asserted that the undue-influence claim involves a contest to the validity of the trusts, that there was no duty owed to support the breach-of-fiduciary-duty claim, and that the fraudulent-concealment claim failed because Bruce owed the plaintiffs no fiduciary duty. The circuit court issued an order on December 30, 2024, granting Bruce's motion for a summary judgment on all the plaintiffs' claims, holding that the plaintiffs' claims were time-barred. The plaintiffs appealed to this Court.

## II. Hall's Extensive Use of Nonexistent or Misquoted Authorities

As stated earlier, Hall, counsel for the plaintiffs, filed briefs in this appeal that contain an astounding number of invalid, inaccurate, and

7

irrelevant citations to legal authorities. That egregious conduct has monopolized an inordinate amount of this Court's resources and has caused both wasted time and wasted costs to Bruce. We quote excerpts from Bruce's brief to demonstrate Hall's extensive use of nonexistent or misquoted authorities in the plaintiffs' opening brief and to demonstrate the time and effort expended by Bruce in responding to Hall's fabricated authorities. We will also detail Hall's use of numerous nonexistent or misquoted authorities in the plaintiffs' reply brief to demonstrate the significant amount of time expended by this Court in reviewing Hall's fabrications.

A. Hall's Use of Nonexistent or Misquoted Authorities in the Plaintiffs' Opening Brief

As Bruce correctly points out in his brief on appeal:

"Undeterred, Appellants continue to attempt to distinguish their claims of undue influence and lack of capacity from 'contests' otherwise time-barred by Ala. Code § 19-3B-604(a). (Appellants' Br. 20-21). Appellants' proffered legal support for this argument, however, presents several problems. First, Appellants cite to Ex parte Helms, 873 So. 2d 1139 (Ala. 2003). Helms does not involve a trust or Ala. Code § 19-3B-604(a). See generally, 873 So. 2d 1139. Rather, it involves a will contest case where this Court held that testamentary capacity could be found even where a person was not competent to transact ordinary, everyday affairs. (Appellants' Br. 21); Helms, 873 So. 2d at 1147. Notably,

8

Appellants provide a quotation from <u>Helms</u> that is not present anywhere in the <u>Helms</u> opinion. This is not the first time that Appellants have misrepresented the opinion from <u>Helms</u>, having previously, and erroneously, argued to the trial court that the case involved a contest as to the validity of a trust on the grounds of fraud and undue influence. (C. 281).

"Appellants next provide a quotation that is not found in <u>Janowiak v. Tiesi</u>, 932 N.E.2d 569, 577 (Ill. App. Ct. 2010), a case that actually involves a trust but never discusses a trust instrument's legal validity or a contest thereof. (Appellants' Br. 21).

"Appellants additionally support their argument by citing to <u>In re Estate of McFarland</u>, 167 S.W.3d 299 (Tenn. 2005), which Appellants also misquote regarding trust contests. (Appellants' Br. 21). Indeed, <u>McFarland</u> has nothing to do with trust validity, but rather is a Tennessee Supreme Court case regarding the construction of a last will and testament and Tennessee's anti-lapse statute. <u>See</u> <u>generally</u> <u>McFarland</u>, 167 S.W.3d 299.

"Most striking, however, is that Appellants next cite to, and provide purported quotations from, an out-of-state case which does not appear to exist. Appellants' provided citation of '<u>In re Trust of Eickhoff</u>, 974 N.W.2d 505, 514 (Neb. Ct. App. 2022)', alleged to be an on-point case from the Nebraska Court of Appeals, is actually one of two Iowa criminal court cases before the Iowa Supreme Court. (Appellants' Br. 21).

"Bruce cannot, therefore, provide response to such case citations, and should not be required to do so. Ala. R. App. P. 28(a)(10); <u>see</u> <u>White Sands Grp., L.L.C. v. PRS II, LLC</u>, 998 So. 2d 1042, 1058 (Ala. 2008) ('Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.'); <u>see also</u> <u>Dykes v. Lane Trucking, Inc.</u>, 652 So. 2d 248, 251 (Ala. 1994)

9

(citing <u>Spradlin v. Spradlin</u>, 601 So. 2d 76 (Ala. 1992)) ('We have unequivocally stated that it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument')."

Bruce's brief at 17-20 (footnotes omitted).

Further, Bruce points out:

"Not only have Appellants failed to provide the requisite elements for fraudulent concealment, but they have again resorted to providing this Court erroneous legal support for their argument, ranging from misquoted cases to completely fictitious cases.

"Appellants first cite <u>Ex parte Seabol</u>, 782 So. 2d 212, 216 (Ala. 2000) for the proposition that '[a] fiduciary relationship imposes an obligation to disclose material facts, and failure to do so may constitute fraudulent concealment sufficient to toll the statute of limitations.' (Appellants' Br. 23). Not only did no fiduciary duty exist between Bruce and Appellants (760 Ill. Comp. Stat. Ann. 3/603), but the quotation attributed to this case is erroneous and the quoted language does not exist on the cited page or anywhere else in the opinion. Appellants thereafter quote <u>McGowan v. Chrysler Corp.</u>, 631 So. 2d 842, 845 (Ala. 1993) as stating, 'Active concealment of facts, when there is a duty to disclose, tolls the running of limitations.' (Appellants' Br. 24). Again, the quoted language does not exist anywhere in the opinion, and even if it did, there was not duty to disclose owed by Bruce to Appellants under Betty's revocable trust. 760 Ill. Comp. Stat. Ann. 3/603.

"Curiously, Appellants next quote <u>Auto-Owners Ins. Co. v. Abston</u>, 822 So. 2d 1187, 1194 (Ala. 2001) as stating, '[W]hen the evidence supports more than one inference as to

10

when the plaintiff discovered or should have discovered the fraud, the question is one for the jury.' (Appellants' Br. 24). Not only does the quoted language not exist in the opinion, but Abston materially supports Bruce's argument, as the case involved this Court holding that the statute of limitations on a plaintiff's fraud claim had run as a matter of law, and that it was error for the trial court to have submitted the claim to a jury. 822 So. 2d at 1198.

"According to the actual Abston opinion, the statute of limitations began to run 'when the plaintiff was privy to facts which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.' Id. at 1195 (citation omitted); Foremost Ins. Co. v. Parham, 693 So. 2d 409 (Ala. 1997); see also Jefferson Cnty. Truck Growers Ass'n v. Tanner, 341 So. 2d 485, 488 (Ala. 1977) ('Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.'). As previously addressed hereinabove, Appellants never actually brought a fraud claim, but their reliance on Abston to submit their tolling argument is misguided.

"While found at the end of their brief, rather than in the section addressing fraudulent concealment, Appellants finally cite two law journals in support of their argument. (Appellants' Br. 28). Again, the quoted language neither exists on the cited page nor anywhere else in the respective articles, and in particular, the Dawson article (authored in 1933) references an Alabama statute and tolling provision which has since been abrogated by the Alabama Legislature and related holdings of this Court. Ala. Code § 6-2-38; Foremost, 693 So. 2d 409.

11

"In addition to again providing this Court erroneous, if not fabricated, quotations from real cases, Appellants additionally continue their practice of providing apparently fictitious cases in order to support their arguments, including 'Gilbert v. Gilbert, 953 So. 2d 1233, 1241 (Ala. Civ App. 2006)' and 'Sowell v. Estate of Smith, 37 So. 3d 754, 761 (Ala. 2009)', neither of which appears to exist. (Appellants' Br. 23-24). As previously addressed in this Brief, it is neither the job of Bruce nor this Court to do Appellants' research for them, and Appellants' ultimately unsupported arguments should therefore be rejected outright."

Bruce's brief at 32-36 (footnotes omitted).

Additionally, Bruce states:

"Not for the first time, the remainder of Appellants' supporting citations either erroneously attribute quotations from cases, or provide cases for which there is no apparent record. The quotation attributed to this Court in Alfa Life Ins. Corp. v. Colza, 159 So. 3d 1240, 1248 (Ala. 2014), is not contained in such opinion. More problematic, counsel for Bruce can find no record, opinion, or other indication that 'Shaw v. Mobile Greyhound Park, Ltd., 605 So. 2d 243, 244 (Ala. 1992)'; 'Ex parte Deepwater Horizon, 246 So. 3d 203, 212 (Ala. 2017)'; or 'Ex parte United Servs. Auto. Ass'n, 78 So. 3d 979, 983 (Ala. 2011),' exist or were otherwise matters brought before this Court.

"Bruce cannot, therefore, provide response to such case citations, and should not be required to do so. Ala. R. App. P. 28(a)(10); see White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008) ('Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.'); Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994) (citing Spradlin v. Spradlin, 601 So. 2d 76 (Ala. 1992)) ('We have

12

unequivocally stated that it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'). Regardless, based on the relevant rules of civil procedure and this Court's prior holdings regarding the same, Appellants did not properly present or preserve this issue at the trial court in order to even merit review of the issue by this Court."

Bruce's brief at 40-42 (footnotes omitted).

B. Hall's Use of Nonexistent or Misquoted Authorities in the Plaintiffs' Reply Brief

In addition to the improper authorities used in the plaintiffs' opening brief, the plaintiffs' reply brief also contains numerous improper authorities, which this Court has been forced to sort out. Although Bruce pointed out Hall's extensive use of improper authorities in the plaintiffs' opening brief, the only place in the reply that Hall addresses his use of improper authorities is in a single footnote:

"Laurie and Mark acknowledge and regret that their opening brief misquoted two secondary sources: an article by Professor Alan Newman and a 1933 article by Professor John Dawson. The error arose from counsel's first use of an AI research tool that summarized commentary not readily available through standard legal databases. The tool misattributed quotes. Counsel accepts full responsibility for relying on those summaries without independently verifying the original texts. The mistake will not recur. But the underlying legal principle, that fiduciaries cannot invoke a

13

> limitations defense when their own concealment delayed discovery, is both correct and well-settled. See Ex parte Seabol, 782 So. 2d 212, 216-17 (Ala. 2000); Ex parte United Serv. Auto. Ass'n, 78 So. 3d 979, 983-84 (Ala. 2011); Hughes v. Glover, 157 So. 2d 299, 302 (Ala. 1963); Franciscan Sisters Health Care Corp. v. Dean, 448 N.E.2d 872, 876 (Ill. 1983); Restatement (Second) of Trusts § 219(1) & cmt. a. Bruce's extended focus on a citation error (rather than the principle it supports) only underscores the lack of any serious rebuttal on the law."

Plaintiffs' reply brief at 27 n.1.

Even though Hall declared that "[t]he mistake will not recur," the second and third citations after that declaration are to cases that do not exist: "Ex parte United Serv. Auto. Ass'n, 78 So. 3d 979, 983-84 (Ala. 2011); Hughes v. Glover, 157 So. 2d 299, 302 (Ala. 1963)." Further, it is apparent that Hall's use of generative AI in the reply brief was not limited to that footnote; rather, the reply brief is full of the misuse of generative AI.

On page 10, Hall cites "Ex parte James, 836 So. 2d 813, 818 (Ala. 2002) (fiduciary self-dealing is presumptively invalid)" to support the proposition that "[a] trustee who rewrites a trust for personal gain, then conceals the change, demands heightened judicial scrutiny." Plaintiffs' reply brief at 10. That case does not support the proposition made; it is

14

a case challenging the constitutionality of the State's methods for funding public schools.

Next, Hall states: "As the Illinois Court of Appeals held in <u>Janowiak v. Tiesi</u>, 'actions for breach of fiduciary duty are fundamentally different from challenges to the validity of a testamentary instrument' and fall outside the scope of contest statutes. 937 N.E.2d 1259, 1273-74 (Ill. App. Ct. 2010)." Plaintiffs' reply brief at 13. However, the quoted material is not found in <u>Janowiak v. Tiesi</u>, 402 Ill. App. 997, 932 N.E.2d 569, 342 Ill. Dec. 442 (2010); the reporter citation is to a withdrawn Indiana Court of Appeals case -- <u>State v. Laker</u>, 937 N.E.2d 1259 (Ind. Ct. App.), <u>withdrawn from bound volume</u>, <u>opinion withdrawn and superseded</u>, 939 N.E.2d 1111 (Ind. Ct. App. 2010)); and the pinpoint citation is to a Massachusetts Appeals Court case -- <u>IDC Rsch., Inc. v. Commissioner of Revenue</u>, 78 Mass. App. Ct. 352, 937 N.E.2d 1266, 1273 (2010).

In the following sentence, Hall states: "Likewise, the Massachusetts Appeals Court held that tort claims arising from trustee misconduct in administering a trust are not subject to contest limitations. <u>Deroy v. Estate of Baron</u>, 136 N.E.3d 748, 755 (Mass. App. Ct. 2019)." Plaintiffs' reply brief at 13. No case exists with this combination of style

and citation. The case with this style is an Appellate Court of Connecticut case.[1] The citation is to four different cases from the Court of Appeals of New York.[2]

In the next sentence, Hall states: "And in In re Estate of Domhoff, the court ruled that a fraud-based claim concerning concealed amendments 'fell outside traditional contest statutes,' particularly when disclosure was withheld. 217 A.3d 845, 853-54 (Pa. Super. Ct. 2019)." Plaintiffs' reply brief at 13-14. This Court could not locate a case with this style, and the citation is to the dissent in Commonwealth v. Bishop, 655 Pa. 270, 217 A.3d 833, 845 (2019), a criminal case regarding possession of a firearm, marijuana, and paraphernalia.

Hall then states: "In Ex parte Seabol, 782 So. 2d 212, 216-17 (Ala. 2000), the Court held that a fiduciary's concealment of material facts tolls limitations, stressing that 'trust depends on full transparency.' See also

---

[1]See Deroy v. Estate of Baron, 136 Conn. App. 123, 43 A.3d 759 (2012).

[2]See Barber v. BorgWarner, Inc., 34 N.Y. 3d 986, 136 N.E.3d 748, 113 N.Y.S. 3d 2 (2019); Delgado v. State, 34 N.Y. 3d 986, 136 N.E.3d 748 113 N.Y.S. 3d 2 (2019); Hewitt v. Palmer Veterinary Clinic, PC, 34 N.Y. 3d 986, 136 N.E.3d 748 113 N.Y.S. 3d 2 (2019); Ates v. Crecca, 34 N.Y. 3d 986, 136 N.E.3d 748, 113 N.Y.S. 3d 2 (2019).

16

Hughes v. Glover, 157 So. 2d 299, 302 (Ala. 1963) (rejecting limitations defense where 'fraudulent concealment' delayed plaintiff's discovery of claim)." Plaintiffs' reply brief at 15. The quoted material is not found in Ex parte Seabol. That case did not address a fiduciary concealing facts; rather, it addressed whether it was reasonable for a realtor to rely on the oral representations of his attorney and banker. Ex parte Seabol, 782 So. 2d at 217. Further, "Hughes v. Glover, 157 So. 2d 299, 302 (Ala. 1963)" is not a real case; the case with this style is an 1893 Appellate Court of Illinois case unrelated to the legal principle asserted in the parenthetical.[3] Additionally, the citation is to Bonvillian v. Klein, 157 So. 2d 298 (La. Ct. App. 1963), a case regarding damage to an automobile. Continuing on page 15, Hall states: "Permitting Bruce to invoke § 604 after years of silence would 'transform statutes of repose into tools for impunity,' a result rejected by every jurisdiction to consider it. Janowiak v. Tiesi, 937 N.E.2d at 1274." Id. at 15. That quotation is not found in

_____

[3]See Hughes v. Glover, 53 Ill. App. 141 (1894).

17

that case or in any other case this Court could find, and the citation is to a Supreme Court of Ohio case regarding a public-records request.[4]

On page 17, Hall states: "Even if Bruce had sent proper notice (he did not), § 604's protections would still be unavailable. Repose is not a reward for concealment. Alabama courts have made clear that a fiduciary cannot shield misconduct behind a clock he controlled. See Ex parte Seabol, 782 So. 2d 212, 216-17 (Ala. 2000); Ex parte United Serv. Auto. Ass'n, 78 So. 3d 979, 983-84 (Ala. 2011); Hughes v. Glover, 157 So. 2d 299, 302 (Ala. 1963)." Plaintiffs' reply brief at 17. Hall cites "Ex parte United Serv. Auto. Ass'n, 78 So. 3d 979"; no such case exists. A case with a nearly identical style -- Ex parte United Servs. Auto Ass'n, 365 S.C. 50, 614 S.E. 2d 652 (2005) -- is from the South Carolina Court of Appeals and deals with underinsured-motorist benefits. The case assigned that citation is P.A. v. L.S., 78 So. 3d 979 (Ala. Civ. App. 2011), a case dealing with a custody dispute between a mother and paternal grandparents. Hall also cites "Hughes v. Glover, 157 So. 2d 299 (Ala. 1963)"; yet again, that case does not exist.

---

[4]See State ex rel. Bardwell v. Cuyahoga Cnty. Bd. of Comm'rs, 127 Ohio St. 3d 202, 937 N.E.2d 1274 (2010).

On page 18, Hall states: "Courts interpreting similar UTC provisions have rejected that tactic. See In re Estate of Lewy, 885 N.W.2d 345, 351 (Minn. Ct. App. 2016) (no repose where fiduciary suppressed amendment and failed to notify); In re Estate of Ruesing, 837 N.W.2d 201, 208-09 (Mich. Ct. App. 2013) (strict compliance required; late and defective notice insufficient)." Plaintiffs' reply brief at 18. The only case found with the style In re Estate of Lewy is an Appellate Court of Illinois case involving the misdemeanor battery conviction of a caretaker of an 88-year-old disabled woman and the Illinois Elder Abuse and Neglect Act. It is In re Estate of Lewy, 112 N.E.3d 1062, 425 Ill. Dec. 397 (App. Ct. 2018). The reporter citation is to a case styled In re Estate of Flaws, 885 N.W.2d 336, 345 (S.D. 2016), which is a Supreme Court of South Dakota case dealing with distribution of the estate of a member of the Crow Creek Indian Tribe, and it does not contain a page 351. Further, "In re Estate of Ruesing, 837 N.W.2d 201 (Mich. Ct. App. 2013)" does not exist. The reporter citation is to a page in State v. Neiderbach, 837 N.W.2d 180 (Iowa 2013), a case regarding a defendant's conviction on six counts of child endangerment.

Next, Hall states: "Under Alabama law, if a trustee benefits personally from a transaction involving trust property, the law presumes it was improper. See Ex parte James, 836 So. 2d 813, 818 (Ala. 2002)." Plaintiffs' reply brief at 20-21. This is the second citation to this case, which still does not support the assertion being made. Hall also states: "Even the comment to UTC § 603 (adopted in Alabama) warns that fiduciaries who abuse revocable trust powers in their own favor may be liable. Courts applying that provision have rejected the idea that it shields fraud or manipulation. See, e.g., In re Estate of Lewy, 885 N.W.2d 345, 351 (Minn. Ct. App. 2016) (rejecting limitations defense where fiduciary concealed self-dealing amendments); Restatement (Third) of Trusts § 94 cmt. b." Id. at 21. However, no comment to § 603 of the Uniform Trust Code supports the assertion made. See Unif. Tr. Code § 603. Hall again cites "In re Estate of Lewy, 885 N.W.2d 345," which does not exist. Additionally, the comment to the Restatement cited defines beneficiaries and does not support the assertion for which it is cited. See Restatement (Third) of Trusts § 94 cmt. b. (A.L.I. 2003).

On page 22, Hall states: "As the Alabama Supreme Court has emphasized, 'summary judgment is inappropriate where the material

20

facts are accessible only to the moving party.' Ex parte Bufkin, 936 So. 2d 1042, 1045 (Ala. 2006)." Plaintiffs' reply brief at 22. The quoted material is not found in that case.

On page 23, Hall, citing Hensley v. Poole, 910 So. 2d 96 (Ala. 2005), states: "[T]his Court allowed a claim where a sibling used fiduciary power to benefit himself at others' expense. The Court recognized that abuse of authority can harm the principal and her intended heirs." Plaintiffs' reply brief at 23. This assertion is not supported by that case; the case deals with corporate minority and majority shareholders and their respective fiduciary duties. In an attempt to show that Illinois law also supports the assertion "found" in Hensley, Hall states: "In In re Estate of Mankowski, 132 N.E.3d 578, 587 (Ill. App. Ct. 2019), the court allowed remainder beneficiaries to sue for prior self-dealing once the settlor died. Illinois also presumes fraud when a fiduciary gains from a transaction with someone in a dependent position." Plaintiffs' reply brief at 23-24. Both the Appellate Court of Illinois -- In re Estate of Mankowski, 30 N.E.3d 1111, 391 Ill. Dec. 473 (App. Ct. 2014) -- and the Supreme Court of Illinois -- In re Estate of Mankowski, 31 N.E.3d 768, 391 Ill. Dec. 793 (2015) (table) -- issued appellate decisions in a case with that style. That

case concerns a wrongful-death action brought by a widow against a hospital and a physician, and it does not support the assertion made.

On page 25, Hall yet again cites to language that cannot be found in <u>Ex parte Seabol</u>, 782 So. 2d 212 (Ala. 2000): "A fiduciary relationship imposes a duty to disclose; concealment by a fiduciary tolls the statute." Plaintiffs' reply brief at 25-26.

On page 26, Hall cites "<u>Kelly v. Conn. Mut. Life Ins. Co.</u>, 628 So. 2d 454, 458 (Ala. 1993) ('If the evidence supports more than one inference as to when the plaintiff discovered the fraud, the question is for the jury.')." Plaintiffs' reply brief at 26.  The direct quote in the parenthetical is not in that case, but the case does contain similar language: "'The question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury.'" <u>Kelly v. Connecticut Mut. Life Ins. Co.</u>, 628 So. 2d at 458 (quoting <u>Vandegrift v. Lagrone</u>, 477 So. 2d 292, 295 (Ala.1985)).

On page 28, Hall states: "As Alabama courts have long held, a party may not assert limitations where the delay was induced by fraudulent or inequitable conduct.  <u>See</u> <u>Hughes v. Glover</u>, 157 So. 2d 299, 302 (Ala. 1963) ('A wrongdoer cannot plead limitations when the delay was induced

by his own fraudulent conduct.')." Plaintiffs' reply brief at 28. Yet again, this case does not exist.

On page 29, Hall once more cites to language that cannot be found in <u>Ex parte Seabol</u>, 782 So. 2d 212 (Ala. 2000): "A fiduciary relationship imposes a duty to disclose; concealment by a fiduciary tolls the statute." Plaintiffs' reply brief at 29. Hall also cites "<u>Hughes v. Glover</u>, 157 So. 299, 302 (Ala. 1963)" again. <u>Id.</u>

On page 30, Hall states: "Alabama courts have repeatedly held that 'where one induces another, either by words or silence, to delay filing an action until after the running of the applicable statute, he will be estopped from asserting it.' <u>Ex parte United Serv. Auto. Ass'n</u>, 78 So. 3d 979, 983-84 (Ala. 2011)." Plaintiffs' reply brief at 30. Again, this case and the quotation do not exist. Then Hall states: "'That principle is even more rigidly applied where the defendant is a fiduciary or holds asymmetric control over the relevant facts. <u>See</u> <u>Hall v. Hall</u>, 903 So. 2d 78, 84 (Ala. 2004) (summary judgment improper where factual dispute existed about whether fiduciary conduct caused delay in suit)." Plaintiffs' reply brief at 30. <u>Hall</u> ends on page 82, the procedural history does not indicate that

there was a summary judgment, and the case does not support the assertion made.

In the same citation sentence, Hall also cites "Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d 307, 308-09 (Ala. 1997) ('Whether a plaintiff should have discovered fraud is generally a jury question, particularly where a fiduciary relationship exists.')." Plaintiffs' reply brief at 30-31. The parenthetical quote is not found within the case, but the principle is present there: "The question of when the party discovered or should have discovered the fraud is generally one for the jury. Kelly v. Connecticut Mutual Life Ins. Co., 628 So. 2d 454, 458 (Ala.1993) (citing Vandegrift v. Lagrone, 477 So. 2d 292, 295 (Ala. 1985))." Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d at 308.

On page 31, Hall cites "Gilbert v. Murdock, 646 So. 2d 953, 956 (Ala. 1994)." Plaintiffs' reply brief at 31. The case with this style decided by the Superior Courts of Law and Equity of North Carolina in 1802, was regarding enslaved people. See Gilbert v. Murdock, 3 N.C. (2 Hayw.) 182, 182 (1802). Further, no case begins on page 953 of the cited reporter, but Eads Operating Co. v. Thompson, 646 So. 2d 948 (La. Ct. App. 1994), contains that page; it is a mineral-rights case.

24

On page 32, Hall states: "Summary judgment is improper where the key facts are in the hands of the movant, and the nonmovant has not had fair access to discovery. Ex parte Bufkin, 936 So. 2d 1042, 1045 (Ala. 2006); Ex parte Georgia Cas. & Sur. Co., 531 So. 2d 838, 841 (Ala. 1988)." Plaintiffs' reply brief at 32. Ex parte Bufkin does not support the proposition made; that case involved a petition for the writ of mandamus arguing that the trial court erred in denying a motion to dismiss.

On page 33, Hall states: "Waiver requires a voluntary, knowing relinquishment of a known right. See Hall v. Hall, 903 So. 2d 78, 83-84 (Ala. 2004)." Plaintiffs' reply brief at 33. Again, that case ends at page 82, and the case does not support the proposition.

On page 34, Hall states: "Moreover, as the Illinois Supreme Court has explained, 'one who wrongfully conceals material facts and thereby prevents discovery of his wrong cannot plead limitations as a defense.' Franciscan Sisters Health Care Corp. v. Dean, 448 N.E.2d 872, 876 (Ill. 1983)." Plaintiffs' reply brief at 34. The quoted material is not found within that case.

On page 35, Hall states: "As this Court has held, appellate review is not foreclosed where 'the substance of the argument was clearly

presented.' Ex parte Ryals, 773 So. 2d 1011, 1013 (Ala. 2000)." Plaintiffs' reply brief at 35. That case is on point as a case focusing on appellate review, but the quoted material is not found in the case. In the next sentence, Hall states: "Similarly, in Kennedy v. Western Sizzlin Corp., 857 So. 2d 71, 75 (Ala. 2003), the Court reversed summary judgment where the non-movant had objected to being denied discovery, holding that formal objections were not required where the issue was clear." Id. The Court did reverse a summary judgment in that case, but there is no mention of a party objecting to being denied discovery.

On pages 35-36, Hall states: "And procedural doctrines like waiver and preservation cannot be used to bar parties from raising claims they were actively prevented from asserting. See Ex parte Seabol, 782 So. 2d 212, 216-17 (Ala. 2000) (fiduciary concealment tolls limitations); Ex parte United Serv. Auto. Ass'n, 78 So. 3d 979, 983-84 (Ala. 2011) (estoppel bars limitations defense where defendant caused delay)." Plaintiffs' reply brief at 35-36. Waiver and preservation are not mentioned in Ex parte Seabol, and, again, "Ex parte United Serv. Auto. Ass'n, 78 So. 3d 979," is not a real case.

On page 36, Hall states: "Even if any argument were imperfectly phrased, this Court retains discretion to reach issues that implicate fundamental rights and procedural fairness. <u>Ex parte Jackson</u>, 780 So. 2d 681, 684-85 (Ala. 2000) (appellate briefing may elaborate on trial-level objections so long as the core issue was presented)." Plaintiffs' reply brief at 36. That case does not support the proposition made. It is a case in which the Court denied a petition for the writ of mandamus in a medical-malpractice action.

On page 37, Hall again cites "<u>In re Estate of Mankowski</u>, 132 N.E.3d 578, 587 (Ill. App. Ct. 2019)," which does not exist. Plaintiffs' reply brief at 37.

On page 38, Hall states: "And <u>Franciscan Sisters Health Care Corp. v. Dean</u>, 448 N.E.2d 872, 876-78 (Ill. 1983), rejected repose defenses where fiduciary concealment prevented timely discovery." Plaintiffs' reply brief at 38. This assertion is not found within that case.

Lastly, Hall states: "In <u>In re Estate of Mueller</u>, 616 N.E.2d 1051, 1056 (Ill. App. Ct. 1993), the court imposed a constructive trust where a trustee's undue influence had redirected estate assets. Illinois courts consistently hold that 'equity will not permit a fiduciary to profit from

27

wrongful conduct.'" Plaintiffs' reply brief at 38. No case with that style and citation exists, and, therefore, the quoted material does not exist. The case with that style -- In re Estate of Mueller, 275 Ill. App. 3d 128, 655 N.E.2d 1040, 211 Ill. Dec. 657 (1995) -- is a case regarding contingent beneficiaries and Illinois's slayer statute. Hall cites that case again on page 41. See Plaintiffs' reply brief at 41.

### III. Procedural History After Briefing

After this Court thoroughly reviewed the plaintiffs' opening brief and reply brief, we issued an order on January 26, 2026, requiring Hall to appear before this Court on February 4, 2026, to show cause why he should not be subjected to sanctions for filing briefs that contained invalid, inaccurate, and/or irrelevant citations to legal authorities. On February 2, 2026, Hall moved to withdraw from the case and stated that Vaughan Drinkard, who had represented the plaintiffs at trial but had not signed their briefs on appeal, would remain as counsel for the plaintiffs. At the show-cause hearing on February 4, during which Hall was represented by counsel, Hall admitted that many of the legal authorities in his briefs do not exist and that he improperly used AI to obtain those authorities. Hall apologized, accepted sole responsibility for

his actions, and conceded that sanctions were appropriate. Hall also informed the Court that he had self-reported his actions to the Alabama State Bar, and he offered to reimburse Bruce for the fees and costs incurred in responding to his fabricated legal authorities. On February 6, 2026, Drinkard moved this Court to grant each side leave to file a supplemental brief. On February 9, 2026, Hall notified this Court that he had delivered a check for $17,200 to Bruce's counsel. That amount was the estimate provided by Bruce's counsel for the fees and costs incurred in responding to the fabricated legal authorities.

## IV. Discussion

### A. The Problem of AI-Generated "Hallucinations"

The situation we face in the case before is, unfortunately, not an isolated incident in today's judicial system. The advent of AI has ushered in an era wherein "hallucinations," or fake citations, within court filings have become all too common. See, e.g., Johnson v. Dunn, 792 F. Supp. 3d 1241 (N.D. Ala. 2025) (sanctioning attorneys who submitted to the court false case citations that were hallucinated by generative AI and citing several examples of similar cases), and United States v. McGee, 806 F. Supp. 3d 1264 (S.D. Ala. 2025) (same). There have always been instances

of misquotations and misleading citations within court filings; however, the arrival of generative AI in recent years has led to an outbreak of such instances throughout the country. Unfortunately, this case clearly fits into this category.

But to be clear, the root of the problem does not lie with AI itself; on the contrary, AI-assisted legal research can sometimes be quite helpful to both practitioners and judges. See Snell v. United Specialty Ins. Co., 102 F.4th 1208, 1234 (11th Cir. 2024) (Newsom, J., concurring) ("offer[ing] … preliminary thoughts about whether and how [AI-powered large language models] might aid lawyers and judges in the interpretive enterprise"). Rather, the problem of fake citations in court filings is the result of attorneys failing to properly research and verify the results of AI-generated citations -- in short, attorney negligence in checking his or her work. And such failures often lead to problems like those in this case.

In a recent case from the Northern District of Alabama, Judge Manasco set forth a few of the many harms that flow from the submission of fake legal authorities. As stated in Johnson v. Dunn, 792 F. Supp. 3d at 1256, "[e]very lawyer knows that citing fake cases in a court filing is a terrible decision. … In the few years that generative AI has affected court

filings, it has become well established that '[m]any harms flow from the submission of fake opinions.' <u>Mata v. Avianca, Inc.</u>, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)." Further,

> "[s]ome such harms affect the case at hand: 'The opposing party wastes time and money in exposing the deception,' and '[t]he client may be deprived of arguments based on authentic judicial precedents.' <u>Mata</u>, 678 F. Supp. 3d at 448. While the court takes time to investigate, other cases may be disrupted or deprived of judicial attention. Other harms affect the judicial system:
>
> > "'There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.'
>
> "<u>Id.</u> at 448-49. And the public … is justifiably horrified and outraged when filings in a court of law substitute lazy, convenient fictions for the truth."

<u>Id.</u> at 1256-57.

In the present case, as detailed above, both Bruce and this Court have wasted much time and effort in chasing down citations that are misrepresented or simply do not exist. Based on Hall's response at the hearing we held on February 4, 2026, and his subsequent actions, it

31

appears that he is very remorseful, and he claims that none of the fake citations were submitted with ill-intent. We recognize that the inclusion of fake or misleading citations within briefs may be done with varying mental states. But regardless of whether Hall included the AI hallucinations intentionally, recklessly, or negligently, the result is the same -- the wasteful expenditure of precious resources by both the opposing party and the courts.

This kind of egregious conduct cannot be tolerated in a judicial system whose purpose is to pursue truth and justice, but whose resources are already strained almost to the maximum. This Court -- indeed, every court within our judicial system -- must be able to trust the submissions of attorneys who practice before it. Otherwise, the precious resources available to us will eventually be strained to the breaking point.

B. The Present Case

With all that said, we turn now to the case before us. The plaintiffs' briefs in this case are wholly inadequate under Rule 28, Ala. R. App. P. As this Court has stated:

> "Rule 28(a)(10), Ala. R. App. P., requires that arguments in an appellant's brief contain 'citations to the cases, statutes, other authorities, and parts of the record relied on.' Further, 'it is well settled that a failure to comply with the

32

requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.' State Farm Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 806, 822 (Ala. 2005) (citing Ex parte Showers, 812 So. 2d 277, 281 (Ala. 2001)). This is so, because '"it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Butler v. Town of Argo, 871 So. 2d 1, 20 (Ala. 2003) (quoting Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994))."

Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So. 2d 1, 9 (Ala. 2007).

In the present case, the plaintiffs' briefs cite numerous invalid, inaccurate, or irrelevant legal authorities. Most of the legal authorities in the briefs are misquoted or nonexistent. Fabricated legal authorities are certainly not sufficient to support legal arguments. Because the plaintiffs have failed to file an even minimally adequate brief, this Court is left with nothing to review, and, thus, the appeal is due to be dismissed.

Further, the plaintiffs' motion to file "supplemental" briefs is due to be denied. The Alabama Rules of Appellate Procedure do not contemplate allowing a party whose attorney has filed a poor brief to simply file a new brief with new arguments supported by new legal authorities after the briefing period has closed. Allowing such a

procedure, which would amount to a second bite at the apple, would be fundamentally unfair to the opposing party and to the efficient administration of justice.

Rule 38, Ala. R. App. P., provides: "In civil cases, if the appellate court shall determine on motion or ex mero motu that an appeal is frivolous, it may award just damages and single or double costs to the appellee." "Frivolous" is defined as something that is "[l]acking a legal basis or legal merit; manifestly insufficient as a matter or law." Black's Law Dictionary 807 (12th ed. 2024). Further, "[t]his Court … [has] jurisdiction under Rule 38, Ala. R. App. P., to determine whether an appeal is frivolous. 'This rule vests the imposition of sanctions within the sound judicial discretion of the appellate court.' Gilbert v. Congress Life Ins. Co., 646 So. 2d 592, 594 (Ala. 1994)." Walker v. Blackwell, 800 So. 2d 582, 588 (Ala. 2001). See also Powers v. Chandler Homes, LLC, 413 So. 3d 707, 712 (Ala. 2012) (awarding under Rule 38 "just damages" in the amount of $7,070.54 for a frivolous appeal), and Guthrie v. Fanning, 329 So. 3d 1, 3-4 (Ala. 2020) (awarding under Rule 38 and under the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala. Code 1975, attorney fees in the amount of $3,495 for a frivolous appeal).

An appeal can be deemed frivolous if it is brought for a frivolous reason such as delay or harassment, but an appeal can also be deemed frivolous if it is presented in a frivolous way. For example, in <u>Johnson v. Ives</u>, 224 So. 3d 603, 604 (Ala. Civ. App. 2016), the Alabama Court of Civil Appeals correctly concluded that an appeal was frivolous and that sanctions should be imposed because the appellant's brief presented an issue that was "clearly contrary to well-settled, black-letter law" and "completely failed to comply with the requirements of Rule 28, Ala. R. App. P."

In the present case, we conclude that, in the way the appeal was presented by Hall with numerous misquoted or nonexistent legal authorities, the appeal lacked any legal basis and was manifestly insufficient as a matter of law. Thus, this appeal is frivolous, and sanctions are appropriate under Rule 38.

In addition, this Court can impose sanctions under our inherent authority. It is a long-standing principle that this Court has the inherent "power to conduct judicial proceedings in an efficient and effective manner." <u>Ex parte Segrest</u>, 718 So. 2d 1, 5 (Ala. 1998).

<u>C. Sanctions</u>

Based on the foregoing, this Court finds the following sanctions to be warranted and appropriate:

(1) Hall is hereby ordered to pay attorney fees and costs to Bruce in the amount of $17,200 (this amount includes any amount that has already been paid to Bruce);

(2) Concerning the costs of this appeal that are payable to this Court, Hall is ordered to pay double costs;

(3) Hall is prohibited from filing anything else in this Court unless another attorney, who is in good standing with the Alabama State Bar, signs the filing in accordance with Rule 25A, Ala. R. App. P.; and

(4) We also refer Hall to the Alabama State Bar for potential discipline concerning his possible violations of the Alabama Rules of Professional Conduct.

Finally, we grant Hall's motion to withdraw from representing the plaintiffs in this case. We note that if Hall had not moved to withdraw, this Court would have likely disqualified him from further participation in this case.

V. Conclusion

36

This Court takes Hall's misconduct very seriously. As demonstrated earlier, the improper use of AI in the plaintiffs' briefs was widespread and particularly egregious. This Court and Bruce have wasted a significant amount of time and resources reviewing and responding to the fabricated legal authorities.

In the present case, because the plaintiffs' briefs failed to use valid legal authorities and, thus, failed to comply with the Alabama Rules of Appellate Procedure, the appeal is dismissed.[5] Further, the plaintiffs' motion to file supplemental briefs is denied. Additionally, this Court imposes sanctions on W. Perry Hall as set forth above. Lastly, Hall's motion to withdraw is granted.

MOTION TO FILE SUPPLEMENTAL BRIEFS DENIED; SANCTIONS IMPOSED; MOTION TO WITHDRAW GRANTED; APPEAL DISMISSED.

---

[5]We note that the dismissal of this appeal is imposed as a sanction because of the particularly egregious facts before us. Importantly, we have found this appeal to be frivolous, and the rules contemplate dismissing such appeals. See Rule 2(a)(2), Ala. R. App. P. ("An appeal may be dismissed: ... (B) when an appellant takes a frivolous appeal as provided in Rule 38; ... or (D) when a party fails to comply substantially with these rules."). However, we recognize that each case must be evaluated based upon its own facts and that any sanctions imposed will necessarily be case-specific.

Shaw, Wise, Bryan, and Parker, JJ., concur.

Cook, J., concurs specially, with opinion.

McCool, J., concurs specially, with opinion, which Stewart, C.J., joins.

Sellers and Mendheim, JJ., concur in part and dissent in part, with opinions.

COOK, Justice (concurring specially).

I concur with the well-reasoned main opinion. I write separately to highlight two points.

First, my initial inclination was that our Court should affirm the judgment rather than dismiss this appeal. Here, W. Perry Hall failed to cite virtually any actual legal authority in support of the arguments that he has made on appeal. That failure is a violation of Rule 28(a)(10), Ala. R. App. P., which expressly requires parties to support any arguments that they make on appeal with sufficient legal authority. Absent such supportive authority by the appellant, our Court would normally affirm the judgment or decision being challenged on appeal. See, e.g., White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008); Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So. 2d 1, 9 (Ala. 2007).

In my view, dismissal of an appeal is a particularly strong sanction that should be used sparingly, especially when there are other sanctions available. I believe that sanctions for the use of hallucinated cases generated by artificial intelligence ("AI") should generally be imposed against the lawyer rather than the client. However, the particularly

egregious nature of Hall's conduct here compels a stronger result than a mere affirmance.

As explained thoroughly in the main opinion, Hall first cited hallucinated cases in the appellants' opening brief. Bruce Stewart, the appellee, pointed out those hallucinated cases in his response brief. In the appellants' reply brief, Hall apologized for citing hallucinated cases and promised not to do so again. Despite that apology, however, Hall cited even more hallucinated cases in the reply brief. In fact, he did so in the same footnote in which he apologized for his earlier use of hallucinated cases, stating that "[t]he mistake will not recur" and then citing nonexistent cases at the end of the very next sentence. Laurie Ibach and Mark Stewart's reply brief at 27 n.1.

It is simply hard to imagine how this could occur absent, perhaps, using AI to craft the apology for having used AI.[6] It is because of Hall's

_____

[6]To be clear, I do not wish to be understood as taking the position that the use of AI is inherently unethical. Rather, it is my position that it is a lawyer's failure to verify the results generated by AI before including those results in a filing with this Court that creates the ethical issues with which our Court is concerned today. The practice of law requires the incorporation of new technologies, as those technologies are introduced. It might even be argued that, at some point, a lawyer's failure to use AI as a tool -- with appropriate safeguards -- may reflect a lack of competence. See Rule 1.1, Ala. R. Pro. Cond. Even if we reach

40

repeated use of AI hallucinations in his filings before this Court after being made aware of this issue and then apologizing for it that I agree with dismissing this appeal as a sanction for his conduct.

In future cases involving the use of hallucinated cases, I would favor the use of some, or all, of the other sanctions imposed in the main opinion, absent egregious facts, such as those in this case. In my view, dismissal should be one of the last tools used, not the first tool. As the main opinion states: "[E]ach case must be evaluated based upon its own facts" and "any sanctions imposed will necessarily be case-specific." ____ So. 3d at ____ n.5.

Second, I agree with the main opinion's decision to require, in accordance with Rule 25A, Ala. R. App. P., that another lawyer, who is in good standing with the Alabama State Bar, sign any future filing that Hall may make in this Court. Although I would have either (1) set a date for this requirement to expire or (2) set a specific condition that would allow for this requirement to expire,[7] I nevertheless concur. Nothing in

such a day, however, it will always remain the responsibility of the lawyer to verify any caselaw he or she includes in filings to this Court.

[7]For instance, if Hall were to satisfy any requirements imposed by the Alabama State Bar, I might agree to allow this requirement to expire.

41

our opinion today prevents Hall from seeking leave from our Court to end

this requirement at an appropriate time.

McCOOL, Justice (concurring specially).

I concur fully with the main opinion, which I authored. I write specially to respond to Justice Mendheim's special writing and to hopefully alleviate any concern that any member of this Court should be disqualified under Rule 70A(f), Ala. R. Civ. P., which addresses disqualification of a judge in a contempt proceeding and states, in pertinent part:

> "If the alleged contumacious conduct involves gross disrespect directed toward the judge or a personal attack upon the character of the judge, ... then, unless the conduct constitutes a direct contempt and prompt punishment by the summary procedure of section (b) is imperative, the contempt proceeding shall be referred to another judge, who shall hold a hearing to determine whether the person charged with contempt committed the contempt charged, and, if so, to impose punishment."

First, I respectfully disagree with Justice Mendheim's characterization of the language in the main opinion as "aggressive." ___ So. 3d at ___ (Mendheim, J., concurring in part and dissenting in part). He appears to particularly disagree with our statement that W. Perry Hall's "egregious conduct has monopolized an inordinate amount of this Court's resources," ___ So. 3d at ___, and he implies that that statement could in some improper way "leav[e] the impression that the Court

43

considers itself as the subject of serious disrespect." ___ So. 3d at ___ (Mendheim, J., concurring in part and dissenting in part). While the language in the main opinion might be stern, it simply states the truth, and it is not combative, hostile, or personal. Many courts throughout the nation have recently dealt with cases that involve fake and misquoted authorities generated by artificial intelligence ("AI"), and our language, if anything, is milder than in many of those cases. For example, recently, in Whiting v. City of Athens, Tennessee, 170 F.4th 455 (6th Cir. 2026), the United States Court of Appeals for the Sixth Circuit stated the following about two attorneys who had cited cases in their briefs that were either fake or misquoted:

> "Irion and Egli breached the trust that we must have in the lawyers appearing before us. They have brought the profession into disrepute. Irion's and Egli's failure to comply with the basic rules of our profession has forced us and the City to unnecessarily expend time and resources on a case that should have been litigated and resolved straightforwardly but was not. More importantly, by breaching our trust, we can no longer rely on the representations in Irion's and Egli's briefs, harming both their clients (whose cases are now viewed with skepticism) and this court (who must now independently verify everything Irion and Egli write). Finally, Irion and Egli have sullied the reputation of our bar, which now must litigate under the cloud of their conduct."

170 F.4th at 466 (emphasis added).

44

The Court further stated:

"Citing fake cases 'unnecessarily burdens the court and the taxpayers,' so courts can and should fine the offending lawyers to reimburse the court for its time. <u>Noland [v. Land of the Free, L.P.]</u>, [114 Cal. App. 5th 426, 447,] 336 Cal. Rptr. 3d [897,] 914 [(2025)].  <u>A lawyer's misrepresentation of the law and facts heavily burdens the courts and their staffs</u>.  We rely on good briefing to narrow and clarify the issues for our review while helping us locate the facts and the law that will govern the case. …  But we did not have that assistance from Whiting's counsel because we could not rely on any of their briefing to truthfully explain the facts and governing law.  Their submission of fake cases and factual misrepresentations forced the court to individually verify every single citation to determine the appropriate sanction.  <u>To call these consolidated appeals a burden would be an understatement</u>."

<u>Id.</u> at 467-68 (emphasis added).

Therefore, like this Court, the Sixth Circuit Court of Appeals did not deem it inappropriate to point out the burden that the attorney's misconduct places on both the parties <u>and</u> the court.

Second, I do not agree that Rule 70A(f), or any rule or statute concerning contempt, is implicated in any way in this case.  Rule 70A explicitly applies only to "civil or criminal contempt proceedings arising out of civil actions." Rule 70A(a)(1).  The present case did not involve a contempt proceeding.  In fact, neither the word contempt nor any rule or statute dealing with contempt is mentioned anywhere in the main

45

opinion. Instead, this Court ordered Hall to show cause why he should not be sanctioned under Rule 38, Ala. R. App. P., and under this Court's inherent power to conduct the proceedings before it, not under our contempt power. Thus, any disqualification contemplated by Rule 70A has no bearing on this case.

Next, I agree wholeheartedly with Justice Mendheim that "[t]he brunt of the hardship from Hall's misconduct has been on Bruce [Stewart] and his counsel, rather than on this Court," ___ So. 3d at ___, even though it was this Court alone that had to sort through the reply brief, which was filed after Bruce had filed his only brief in this case and which Justice Mendheim describes as the "most troubling" part of Hall's conduct. Id. at ___. Regardless, we cannot ignore the impact of Hall's actions on this Court, and I believe that the main opinion addresses this issue appropriately.

Finally, I join Justice Mendheim's suggestion that consideration should be given to amending the Rules "to address proper sanctions for misconduct related to the use of AI." Id. at ___ n.8. As the main opinion notes, AI can be a tool for great good in the legal profession. However,

the potential problems attendant to its use merit special attention from this Court and its standing rules committees.

Stewart, C.J., concurs.

SELLERS, Justice (concurring in part and dissenting in part).

I concur in part and dissent in part. I agree in large part with the concerns expressed by Justice Mendheim in his special writing. Like him, I am concerned that the show-cause order issued by this Court, the comments of the members of this Court at the show-cause hearing, and the tenor and tone of the main opinion could leave the impression that this Court considers itself the subject of serious disrespect, which might implicate our future impartiality.

Additionally, I do not agree that dismissal of the appeal is appropriate as a sanction for the conduct of a lawyer. Lawyers are agents of their clients, not principals. The distinction between a lawyer as agent and the client as principal centers on the fundamental agency relationship; the client retains ultimate control and authority, while the lawyer acts on the client's behalf, within defined boundaries. The client is the principal who authorizes the lawyer to act, and the lawyer serves as the agent who exercises that authority for the client's sole benefit. The scope of a lawyer's authority is limited to acts authorized by the client, and the lawyer cannot bind the client based on acts that are outside the scope of the lawyer's authority. I cannot imagine that Laurie Ibach and

Mark Stewart authorized, encouraged, or consented to the authoritative citing of nonexistent cases in their appellate briefs. For that reason, I would not dismiss the appeal as a sanction premised on the actions of their lawyer. Rather, having reviewed the facts, the record, and the briefs of the parties, I would affirm the judgment of the Mobile Circuit Court, because the law of trusts and estates, as applied here, shows no error on the part of the trial court and thus provides no path for reversal.

MENDHEIM, Justice (concurring in part and dissenting in part).

I concur in the dismissal of this appeal pursuant to Rule 2(a)(2)(B), Ala. R. App. P., but I disagree with certain aspects of the sanctions imposed against W. Perry Hall.

Regarding the dismissal of the appeal, I generally agree with the concerns about the misuse of artificial intelligence ("AI") expressed in the main opinion and acknowledge that judges must safeguard the integrity of the judicial process. I also note that this Court has several similar cases before us in which the briefs include AI hallucinations, and, as recounted by the main opinion, federal courts and other state courts also are grappling with problems associated with the emergence of AI and counsel's failure to properly use that tool. As the present case illustrates, when counsel fails to exercise prudence in the use of AI, the first gatekeeper against that misconduct is counsel for the opposing party. It was Bruce Stewart's counsel who first called the AI hallucinations to the attention of Hall and this Court by addressing the problem in Bruce's appellee's brief. Hall did not choose to accept responsibility and take appropriate action at that point. Instead, he continued the farce in his reply brief, which is most troubling. Thankfully, the show-cause

proceedings initiated by this Court resulted in Hall's admitting that sanctions against him would be appropriate and in his payment of Bruce's requested attorney's fees and expenses. See Rule 38, Ala. R. App. P.

I do not necessarily agree with some of the more aggressive language in the main opinion, including that Hall's "egregious conduct has monopolized an inordinate amount of this Court's resources," __ So. 3d at __, though the Court certainly has spent more time addressing Hall's inadequate and misleading briefing than normally occurs when counsel fails to comply with Rule 28(a)(10), Ala. R. App. P. But we must be careful about possibly leaving the impression that the Court considers itself as the subject of serious disrespect. See Rule 70A(f), Ala. R. Civ. P. (describing circumstances under which a trial judge must disqualify himself from a contempt proceeding). The brunt of the hardship from Hall's misconduct has been on Bruce and his counsel, rather than on this Court. Not only did Hall's misconduct impose an additional financial burden on Bruce, his nonsensical actions have no doubt exacerbated the stress and uncertainty associated with the underlying litigation and subsequent appeal, especially in light of the fact that this case involved

an intrafamily dispute with Bruce. And, at least potentially, Bruce's counsel was not available to serve some other client because he had to waste time researching and responding to AI hallucinations rather than genuine legal arguments. Further, and not to be forgotten, are Hall's clients, who entrusted him with what was to them an important legal matter. His representation on appeal was of no benefit to them, and, for all that appears, they would have been better served by representing themselves.

I agree with the main opinion that Hall should be formally referred to the Alabama State Bar Association for possible disciplinary proceedings. Although it appears that Hall has already self-reported his misconduct to the Bar Association, the increasing prevalence of the misuse of AI warrants a court's notifying the Bar Association about such misconduct, notwithstanding any report by the attorney in question or someone else. And I encourage judges to be proactive in that regard when the misconduct at issue involves more than a mistake or oversight for which a satisfactory explanation is provided and proper, prompt remedial measures are taken by the attorney at fault. See Canon 1, Ala. Canons Jud. Ethics ("A judge should participate in establishing, maintaining,

52

and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.").[8]

Notwithstanding the foregoing, I disagree with requiring Hall to pay "double costs" of appeal to this Court, at least in the absence of an amendment to Rule 38, Ala. R. App. P.  __ So. 3d at __.[9]  Rule 38 states that, "[i]n civil cases, if the appellate court shall determine on motion or ex mero motu that an appeal is frivolous, it may award just damages and single or double costs to the appellee."  The logic of Rule 38 is that, when an appeal is frivolous, it is the appellant that is the offending party and the appellee that is damaged.  Accordingly, though an appellant has

---

[8]Some consideration also should be given to amending the Alabama Rules of Civil Procedure and the Alabama Rules of Criminal Procedure to address proper sanctions for misconduct related to the use of AI, whether in conjunction with a contempt proceeding or otherwise.

[9]I also have some concern about the sanction related to Rule 25A, Ala. R. App. P., which includes no time or other parameters that might allow the purging of that sanction.  I do not question whether this Court's inherent powers allow for such a sanction.  See Simpson v. Alabama State Bar, 294 Ala. 52, 56, 311 So. 2d 307, 309 (1975).  However, the disciplinary proceedings before the Bar Association would appear to be the better forum in which to address that issue.  And, again, perhaps an amendment to Rule 25A addressing this issue would be in order for purposes of providing notice to the members of the bar about conduct that may result in a suspension or hindrance of an attorney's ability to practice before this Court.  See Ex parte Case, 925 So. 2d 956, 963 (Ala. 2005).

already paid the costs of the appeal to the Court, he may be required to pay "just damages and single or double costs to the appellee." I am not aware of any Alabama law authorizing this Court to require Hall to pay "double costs" of appeal to the Court itself and am unclear on what inherent authority might authorize such a financial penalty. See Rule 48, Ala. R. App. P (discussing contempt for "willful noncompliance with any material and substantive requirement of the [Rules of Appellate Procedure]"); Ala. Code 1975, § 12-2-7(5) (providing, in part, for punishment for contempt by "the infliction of a fine not exceeding $100").